**JOHN CHARLES, Plaintiff**

v.

**LEROY MITCHELL and HESS OIL COMPANY, VIRGIN ISLANDS CORPORATION, Defendant**

Civil No. 1984/43

District Court of the Virgin Islands

Div. of St. Croix

November 1, 1985

ANTHONY TAYLOR, ESQ. (Offices of WINSTON HODGE), Christiansted, St. Croix, V.I., *for plaintiff*

BRITAIN BRYANT, ESQ., Christiansted, St. Croix, V.I., *for defendant Hess Oil*

EDGAR D. ROSS, ESQ., Frederiksted, St. Croix, V.I., *for defendant Leroy Mitchell*

O'BRIEN, *Judge*

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on motion of the defendant, Hess Oil Virgin Islands Corporation, for summary judgment. The sole issue before us is whether the defendant, Leroy Mitchell, was acting within the scope of employment when he was allegedly involved in a traffic accident with the plaintiff John Charles. Since we find that Leroy Mitchell was acting outside the scope of his employment at the time of the alleged accident, summary judgment will enter in favor of HOVIC.

## I. FACTS

Leroy Mitchell ("Mitchell") is an employee of Hess Oil Virgin Islands Corporation ("HOVIC"), responsible for the maintenance of HOVIC's East Refinery. Mitchell's responsibilities required him to be available after normal working hours. HOVIC provided him with a beeper and a company car so he could return to work when needed. HOVIC also provided insurance, maintenance, and fuel for the automobile. HOVIC, however, had a strict company policy prohibiting employees from using company cars for personal use.

On November 8, 1984, Mitchell left work sometime after six o'clock. He drove his company car to his wife's boutique at the United Shopping Plaza. After visiting the boutique Mitchell proceeded to drive on Centerline road toward Sunny Isle Shopping Center. Somewhere between these two shopping areas he allegedly struck Charles. It is undisputed that at the time of the alleged accident Mitchell was not engaged in company business.

On February 20, 1985, Charles filed suit against Mitchell and HOVIC. HOVIC moved for summary judgment and a hearing was held on May 15, 1985. At that time counsel for Charles moved under Fed. R. Civ. P. 56(f) for an extension of time to depose Mitchell. We granted a 30-day extension for this deposition and for counsel to file any supplementary briefs. HOVIC's motion for summary judgment is now ripe for decision.

HOVIC argues that an employer's vicarious liability for employee actions is limited to acts taken within the scope of employment. In response, Charles relies on Martin v. Frett, 17 V.I. 474 (D.V.I. 1980) arguing that the facts in his case are identical to the facts before the court in Frett. He therefore submits we should deny HOVIC summary judgment. We disagree.

■ Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment

as a matter of law. Fed. R. Civ. P. 56(c). The material facts in this case are not in dispute. At the time of the alleged accident Mitchell was using his company car to run a personal errand. Mitchell had responsibilities at the Hess refinery which required him to return to work on occasion and HOVIC has a company policy which prohibits employees from using company vehicles to do anything but travel to and from work.

Given the above stated facts, the narrow issue before us is whether, as a matter of law, an employee can be considered acting within the scope of his employment while engaged in a personal matter, after working hours, in violation of an express company policy. We answer this question in the negative.

## A. *Scope of Employment*

■ We look to the Restatement (Second) of Agency (1958) for the general principles of law with respect to a master's liability for the negligent acts of a servant. 1 V.I.C. § 4 (1957). A master is generally subject to liability for the physical harm caused by the negligent conduct of servants if the servants acted within the scope of employment. Restatement (Second) of Agency § 243 (1958). The restatement defines scope of employment as:

(1) Conduct of a servant is within the scope of employment if, but only if:
(a) it is of the kind he is employed to perform;
(b) it occurs substantially within the authorized time and space limits;
(c) it is actuated, at least in part, by a purpose to serve the master, and
(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

■ ■ If a servant's action is performed with no intention to serve his master, then the act is outside the scope of employment. Restatement (Second) of Agency § 235 (1958). The actual activity of the servant must be of the same general nature as those activities authorized, or incidental to conduct authorized, by the master. Restatement (Second) of Agency § 229(1) (1958). Applying these principles to the case at hand we find Mitchell's actions were not within the scope of his employment.

481

At the time of the alleged accident, Mitchell was not engaged in activity which was intended to benefit HOVIC. Moreover, Mitchell's actions at that time, running a personal errand, are not activities authorized by HOVIC.

## B. *Martin v. Frett*

Charles suggests that these general agency principles must yield to the specific precedent established in Frett, supra. In this case the court denied the defendant summary judgment because it found a question of fact as to whether the driver of a company vehicle was acting within the scope of employment at the time of the accident.

The driver in Frett was a service engineer on 24-hour call. He was responsible for providing emergency service to his company's customers. To facilitate quick response to emergency calls, the driver was provided the use of a company truck. The company paid for all maintenance, insurance, repairs and fuel. The driver in Frett was "authorized to use the truck for personal as well as work-related functions." Frett at 477.

On the day of the accident the driver first stopped at his employer's offices to inquire if there was any work for him. Since there was none, he then drove the company truck to the construction site of his new home. On the way from the construction site to his existing home, the driver was involved in the accident which gave rise to the suit.

Prior to trial, the driver's employer moved for summary judgment arguing the driver was not acting within the scope of employment at the time of the accident. The court denied the motion finding that a genuine issue of fact remained as to whether the driver was acting within the scope of his employment at the relevant time.

Charles' reliance on Frett would be persuasive if the facts before us were identical to those cited above. Unfortunately they are not.

We find that one crucial fact distinguishes Frett from the case before us, that is, the driver in Frett was specifically authorized to use the company vehicle for work as well as personal use. In the present case it is unrebutted that Mitchell was violating an express company policy by driving the vehicle for personal use. This distinction is significant for a number of reasons.

First, when a servant is supplied a company vehicle in order to go to and from work, the mere fact that the employer supplies a vehicle does not establish that those who avail themselves to use of the vehicle are within the scope of employment, especially if the use is merely casual. Restatement (Second) of Agency § 229 comment (d)

(1958). Here the use of the vehicle was not only casual but in direct violation of an express company policy, a policy which Mitchell admits he was aware of.

■ Second, when a master allows an employee to use an instrumentality such as an automobile, the master is liable "only when the instrumentality is being used by the servant for the purpose of advancing the employer's business or interests, as distinguished from the private affairs of the servant." Restatement (Second) of Agency § 238 comment (b) (1958). It is unrebutted that at the time of the alleged incident, Mitchell was running a personal errand and not engaged in any activity to advance HOVIC's interest.

■ Finally, that Mitchell's responsibilities required him to return to work does not, alone, create an issue of material fact. A master is liable for the negligent acts of an "on call" servant, acts which occur after normal working hours, only if the master would have control over the act in question or if the act was part of the servant's duties to his master. Restatement (Second) of Agency § 233 comment (c) (1958). It cannot be argued that HOVIC has control over its employees' ability to conduct errands during nonwork hours. Additionally, it would be ludicrous to suggest that running a personal errand was part of Mitchell's duties as a HOVIC employee. We therefore find that the case before us is factually distinct from Frett.

Even assuming arguendo we were to apply the presumption stated in Frett, that an employee is considered within the scope of his employment merely because he is driving a company vehicle, we believe a strong argument can be made that this presumption has been rebutted by the facts before us, the crucial fact again being that Mitchell was in direct violation of a company policy.

■ In Frett, it was uncontroverted that the employee had specific approval to use the company vehicle for personal use. This express consent on the part of the employer effectively expanded the range of liability by broadening the employee's scope of approved activities. Hess, on the other hand, has purposely limited its range of liability by narrowing its employees' scope of approved activities. HOVIC's express company policy prohibits employees from using company vehicles other than to travel back and forth to work. The doctrine of respondeat superior will not impute vicarious liability on an employer whose employees were not acting within the scope of employment as is the case at hand.

We note that the plaintiff relies exclusively on Frett. We believe a much stronger case for the plaintiff is Fales v. Perez, Civil No. 81/233, 1982 St. X Supp. 288 (May 25, 1982). In Fales, the driver was using a company vehicle for personal purposes on a Sunday. The driver was not scheduled or authorized to work on Sunday and was involved in an accident on that day.

The court in Fales, adopting the rationale of Frett and the Third Circuit case Pacheco v. United States, 409 F.2d 1234 (3d Cir. 1969), denied the defendant's motion for summary judgment. We find BOTH Fales and Pacheco are distinguishable from the facts before us.

In Fales, the court noted that on the day in question the driver had engaged in activity which a jury could conclude were acts within the scope of his employment. It is clear from our case that Mitchell was traveling between two stores, neither stop constituting an act within the scope of employment. Fales, therefore, is distinguishable from the facts before us.

Likewise, Pacheco v. United States, 409 F.2d 1234 (3d Cir. 1969) is also distinguishable from the facts before us. In Pacheco, the Third Circuit adopted the rule that proof of a defendant's ownership of a vehicle and proof of its operation at the time of the accident by an agent of the owner gives rise to a presumption that the driver was acting within the scope of his employment. Pacheco at 1237. The District Court had granted the United States' motion for a directed verdict on the grounds that the plaintiffs had failed to establish their prima facie case. The District Court ruled that the plaintiffs had not proved that the driver of the Coast Guard vehicle was acting within the scope of employment at the time of the accident. The Third Circuit reversed the District Court adopting the above stated presumption.

■ Our case is distinguishable from Pacheco because the defendant in Pacheco did not have an opportunity to present evidence to rebut the presumption. In our case, HOVIC, through the affidavits attached to its motion, has adequately rebutted this presumption. It is clear from these affidavits that Mitchell was not acting within the scope of his employment when the accident allegedly occurred.

### III. CONCLUSION

In summary, the case before us is distinct from Frett, Fales and Pacheco. The affidavits attached to HOVIC's motion convince us that Mitchell was not acting within the scope of his employment and therefore summary judgment will enter in favor of HOVIC.

## JUDGMENT

THIS MATTER came before the Court on motion for summary judgment pursuant to Fed. R. Civ. P. 56. The Court having filed its Memorandum Opinion of even date herewith, and the premises considered, now therefore it is

ORDERED, ADJUDGED AND DECREED:

THAT defendant's motion for summary judgment be, and the same, is hereby GRANTED and Plaintiff's complaint as to Hess Oil Virgin Islands Corporation is DISMISSED with prejudice.